UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DOMINIC DAVIS,

                           Plaintiff,

                           v.

ANDREW SAUL, COMMISSIONER,

                           Defendant.

**Hon. Hugh B. Scott**

**18CV1330**

**CONSENT**

**Order**

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 6 (plaintiff), 7 (defendant Commissioner)). Having considered the Administrative Record, filed as Docket No. 5 (references noted as "[R. __]"), and the papers of both sides, this Court reaches the following decision.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits. The parties consented to proceed before a Magistrate Judge (Docket No. 8, Order of Oct. 4, 2019).

## PROCEDURAL BACKGROUND

The plaintiff ("Dominic Davis" or "plaintiff") filed an application for disability insurance and Supplemental Security Income benefits on January 23, 2015 [R. 12]. That application was denied initially. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who

considered the case de novo and concluded, in a written decision dated August 29, 2017, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on September 25, 2018, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on November 26, 2018 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 6, 7), but plaintiff did not reply (cf. Docket No. 9, extending deadline for any reply). Upon further consideration, this Court then determined that the motions could be decided on the papers.

**FACTUAL BACKGROUND**

Plaintiff, a 32-year-old on the onset date with an eleventh-grade education, last worked as a general laborer at a chicken plant (among other jobs) [R. 14, 22]. Plaintiff contends that he was disabled as of the onset date of January 6, 2015 [R. 12]. The ALJ found that plaintiff was unable to perform any past relevant work, as a mover (very heavy work), poultry hanger (medium work), forklift operator (medium work), or a general laborer at a chicken plant [R. 22, 14]. Plaintiff claims the following impairments deemed severe by the ALJ: bilateral carpel tunnel, knee pain with left knee medial meniscal tear, scoliosis, sleep apnea, obesity, adjustment disorder with mixed anxiety and depressed mood, and major depression [R. 15]. As for plaintiff's obesity, he was 5' 11" tall and weighed 255-64 pounds and the ALJ classified plaintiff as obese and the obesity reduced his ability to perform exertional activities [R. 15].

Plaintiff had been assessed with hypertension, but no significant treatment has been needed and no practitioner mentioned it as a significant functional limitation [R. 15]

**MEDICAL AND VOCATIONAL EVIDENCE**

Dr. Kathleen Kelley examined plaintiff on November 17, 2009 [R. 340] (see Docket No. 6, Pl. Memo. at 5). The ALJ gave great weight to this opinion and its conclusion that plaintiff can perform light work [R. 21, 343]. The ALJ, however, gave limited weight to Dr. Kelley's opinion regarding plaintiff's ability to hear [R. 21].

Dr. Sam Banner, D.O., conducted a consultative examination of plaintiff on February 18, 2015 [R. 393], finding that plaintiff could perform light work [R. 393-99, 20-21]. The ALJ gave this opinion great weight [R. 20].

Plaintiff's orthopedic surgeon, Dr. Judson Moore, gave a two-month restriction on lifting five pounds on his right side after his carpel tunnel release [R. 379, 21]. The surgical plan was for plaintiff to work up to the date of surgery and have no use of his left [R. 380].

The ALJ found that plaintiff had a residual functional capacity to perform light work, except plaintiff can occasionally climb stairs, balance, stoop, kneel, crouch, and occasionally climb ropes, ladders or scaffolds; he cannot crawl; he can perform frequent fingering in both upper extremities; he cannot work in hazardous work environments (e.g., unprotected heights and moving mechanical parts), and he can perform only simple routine repetitive tasks [R. 17].

The ALJ found that plaintiff was unable to perform past relevant work as a poultry hanger, fork lift operator, or furniture mover [R. 22]. With this capacity and the inability to perform plaintiff's past work, the vocational expert opined that a hypothetical claimant like plaintiff was able to perform such occupations as small products assembler, laundry folder, or cashier II (all light exertion jobs) [R. 23]. If factored in more restrictive limitations such as sit/stand option with no vibrating machinery and occasional fingering with both hands (findings

3

not made by the ALJ [R. 23]), the expert further opined that such a claimant could still perform such light work jobs as shipping and receiving weigher, cleaner/polisher, and laundry folder [R. 23]. As a result, the ALJ held that plaintiff was not disabled [R. 24].

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

I.   General Standards—Five-Step Analysis

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

4

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that he has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work

5

given the claimant's residual functional capacity, Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994).

II.     Treating Physician Rule, Pre-March 2017

Plaintiff's claims predate changes to the treating opinion regulations.   The treating physician rule applies to claims filed before March 27, 2017, 20 C.F.R. §§ 404.1527, 416.927 (2017), such as this one.   On March 27, 2017, the current version of the SSA regulations eliminates the treating physician's rule for applications filed on or after that date, 20 C.F.R. §§ 404.1520c, 416.920c.   E.g., Barco v. Comm'r, 330 F. Supp. 3d 913, 918 n.2 (W.D.N.Y. 2018) (Wolford, J.) (treating physician rule applies for claims filed in December 2013); Tuper v. Berryhill, No. 17CV6288, 2018 U.S. Dist. LEXIS 149125, at *2, 8 & n.2 (W.D.N.Y. Aug. 31, 2018) (Payson, Mag. J.) (treating physician rule applies to claim filed May 2013).   The treating physician rule provided that

> A treating physician is entitled to controlling weight if it is well supported by clinical and laboratory techniques and is not inconsistent with other substantial evidence.   See 20 C.F.R. § 404.1527; see also Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) (discussing application of the treating physician rule). Additionally, "the Commissioner 'will always give good reasons'" for the weight given to a treating source opinion.   Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2); citing 20 C.F.R. § 416.927(d)(2)). While an ALJ may give less than controlling weight to a treating physician's opinion, he or she must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion."   Halloran, 362 F.3d at 33.   "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific. . . .'" Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009) (quoting Social Security Ruling ("SSR") 96-2p, 1996 SSR LEXIS 9 at *12, 1996 WL 374188, at *5 (S.S.A. July 2, 1996) [(rescinded 2017)].

Taillon v. Comm'r, No. 17CV6812, 2019 U.S. Dist. LEXIS 53376, at *5 (W.D.N.Y. Mar. 28, 2019) (Telesca, J.).

6

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the decision rendered denying disability coverage. At issue is plaintiff's physical functional capacity rather than his claimed mental impairments (cf. Docket No. 7, Def. Memo. at 17 n.2). Plaintiff contends that the physical residual functional capacity assessment was not supported by substantial evidence (Docket No. 6, Pl. Memo. 12-15, 15-16). Plaintiff contends that the ALJ relied upon his lay opinion rather than a medical opinion to support his findings (Docket No. 6, Pl. Memo. at 12-15, citing cases). Specifically, the ALJ relied [R. 21] upon a stale 2009 medical opinion from Dr. Kelley [R. 340] that predated the relevant period by six years (id. at 15). The ALJ relied upon the so-called opinion of Dr. Banner, but plaintiff contends that Dr. Banner did not offer a medical source statement at all (id.) [cf. R. 394-97], although the doctor concluded that plaintiff needed "long term orthopedic and psychiatric care" and noted giving a "good effort on exam" [R. 397]. The ALJ also relied on the opinion of Dr. Judson Moore, but Dr. Moore [R. 380] only opined about plaintiff's carpel tunnel where the ALJ used that opinion to address plaintiff's broader condition (id.). Plaintiff contends that Dr. Moore did not consider his other impairments in evaluating his carpel tunnel syndrome (id.). Plaintiff finally argues that the ALJ did not meet the duty to develop the record (id. at 16 n.1).

Defendant counters that the residual functional capacity finding is supported by substantial evidence (Docket No. 7, Def. Memo. at 17-24). Accepting plaintiff's complaint that he could not work due to hand pain and numbness [R. 80], defendant argues that the ALJ properly considered plaintiff's carpel tunnel treatment (id. at 17-18). Defendant points to treatment notes from Dr. Banner that found plaintiff had full muscle strength (id. at 18) [R. 396,

397]. This finding was also noted by Dr. Phillip Fu in November 2016 that plaintiff walked with a normal gait and had full range of motion in all four extremities [R. 408, 20] (id. at 19, 11). As for plaintiff's back and knee pain complaints, defendant argues that the ALJ noted that plaintiff never sought a full course of physical therapy for these pains and was prescribed Tylenol [R. 20, 84, 406] (id. at 20). The ALJ also considered plaintiff's activities while claiming pain from his back, knees, and wrists plaintiff continued to work [R. 252, 264-71, 227-44] (id.). Defendant contends that the ALJ based the residual functional capacity on all the relevant evidence (Docket No. 7, Def. Memo. at 21). Defendant argues that the ALJ did not rely on Dr. Kelley's 2009 opinion or raw data, that the ALJ considered Dr. Banner's and Dr. Fu's examination notes (id. at 22) and the doctors' observations during those examinations (id. at 23).

I.  Medical Opinions and Staleness

Plaintiff's argument is that the ALJ had insufficient medical opinion to support his findings. Plaintiff has the burden of establishing disability at Steps One through Four of the five-step analysis, see Berry, supra, 675 F.2d at 467. Stale opinions cannot constitute substantial evidence, Majdandzic v. Comm'r of Soc. Sec., No. 17CV1172, 2018 WL 5112273, at *3 (W.D.N.Y. Oct. 19, 2018) (Geraci, Ch.J.) (quotation omitted). As further stated in Majdandzic, supra, at *3, "a gap in time between when an opinion is rendered and the disability hearing and decision does not automatically invalidate that opinion." But such an opinion may be found to be stale "if the claimant's condition deteriorates during that time," id. (citations omitted) (see also Docket No. 6, Pl. Memo. at 14-15, with string citation).

8

While the age of Dr. Kelley's opinion relative to plaintiff's application is extreme (as compared with other staleness cases), plaintiff alleges that his knee pain worsened in 2013-14, over four years after Dr. Kelley's examination (id. at 15, 10; see [R. 86]). Plaintiff testified that his knee pain worsened [R. 86] but points to no objective medical evidence to support this contention. He then testified that he did not go to the doctor when he had severe pain in both knees [R. 86]. The ALJ noted that plaintiff used a non-prescription cane for his knees buckling [R. 18, 86-87]. The record from 2013-14 involved wrist pain and carpel tunnel complaints (see [R. 19-20]; id. at 6-8). As defendant terms it (Docket No. 7, Def. Memo. at 24), plaintiff in November 30, 2016, "conceded to Dr. Fu that he had not seen a primary care provider in four years" [R. 406-07] or done physical therapy for the knee [R. 406], including the period in 2013-14 when his knee pain worsened. To be stale and thus not substantial evidence, Dr. Kelley's opinion had to be superseded by subsequent events; plaintiff here, however, has not provided medical evidence to support worsening knee pain after Dr. Kelley's 2009 opinion. Therefore, the ALJ could properly consider Dr. Kelley's 2009 opinion despite its age.

II.     Dr. Banner and Medical Source Opinion

Plaintiff next contends that Dr. Banner did not submit a medical source opinion yet the ALJ relied upon Dr. Banner's opinion (Docket No. 6, Pl. Memo. at 15; cf. [R. 394-97]). Dr. Banner provided a "Disability Determination Service Medical Examination" report [R. 394]. Apparently, plaintiff is looking for a document called a "medical source opinion" rather than the report provided by Dr. Banner that supplies a medical source opinion.

This Court agrees with defendant (Docket No. 7, Def. Memo. at 21, 22), the ALJ did not analyze the raw medical findings. Instead, the ALJ reported the medical findings of Drs. Banner and Fu [R. 20, 397, 406-09] (id. at 22).

III.     Dr. Moore and Opinion

Dr. Moore treated plaintiff's carpel tunnel syndrome and plaintiff argues that the ALJ relied on this opinion for plaintiff's other conditions (Docket No. 6, Pl. Memo. at 15). Dr. Moore advised plaintiff to have carpel tunnel surgery and that he could perform full duty work until the time of surgery and then after surgery have no use of his left arm [R. 380]. Plaintiff argues that this finding was only for carpel tunnel syndrome and not other ailments (id.). Plaintiff is correct that Dr. Moore's assessment only dealt with his carpel tunnel and stating what plaintiff could do with his arms leading up to and after carpel tunnel surgery. The ALJ commented on Dr. Moore's treatment of plaintiff's carpel tunnel, referring to plaintiff remaining on full duty work for his wrists [R. 19-20].

IV.     Gaps in the Record

Plaintiff summarize his arguments and concludes there are gaps in the record from (1) the ALJ's reliance on Dr. Kelley's stale 2009 opinion and plaintiff's worsened knee pain, (2) Dr. Moore's carpel tunnel evaluation being applied to cover plaintiff's other limitations and his condition generally, and (3) the apparent absence of medical source statement from Dr. Banner for his 2015 examination. As discussed above, the only gaps are the lack of medical evidence for plaintiff's impairments, especially the claimed knee pain. Plaintiff failed to provide proof of worsened knee pain after Dr. Kelley's 2009 opinion; in fact, plaintiff failed to seek medical treatment after 2009. Dr. Moore's evaluation only applied to plaintiff's carpel tunnel and not to

10

plaintiff's overall health. Dr. Banner's report sufficed to provide facts for the ALJ to determine plaintiff's impairments.

Where there is a gap in the record, the ALJ must affirmatively develop the evidence, e.g., Scott v. Astrue, No. 08CV910, 2010 U.S. Dist. LEXIS 64790, at *23 (W.D.N.Y. June 11, 2010) (McCarthy, Mag. J.) (Report & Rec.); Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996). The ALJ's duty to develop the record is not infinite and not required when the evidence at hand is enough to determine disability, Tatelman v. Colvin, 296 F. Supp. 3d 608, 612 (W.D.N.Y. 2017) (Larimer, J.)) (quotation and citations omitted). Plaintiff bears the burden of proving that there are gaps in the record, see Hayes v. Colvin, No. 11CV835, 2014 U.S. Dist. LEXIS 71138, at *23 (Telesca, J.) (the onus is on plaintiff to bring everything to the agency's attention that he is disabled, quoting 20 C.F.R. § 404.1512(a)); Daniels v. Colvin, No. 13CV89, 2014 U.S. Dist. LEXIS 72719, at *23 (W.D.N.Y. May 28, 2014) (Curtin, J.).

Here, the gap is plaintiff's evidence of worsened knee pain. Plaintiff has not indicated any difficulty in obtaining medical evidence for that condition; that evidence may not exist given plaintiff not seeking medical treatment for four critical years.

Therefore, plaintiff's motion for judgment (Docket No. 6) is **denied** and defendant's motion for judgment in his favor (Docket No. 7) is **granted**.

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket No. 6) judgment on the pleadings is **denied**, and defendant's motion (Docket No. 7) for judgment on the pleadings is **granted**. Thus, the decision of the defendant Commissioner is **affirmed** pursuant to sentence four of

42 U.S.C. § 405(g), see <u>Curry v. Apfel</u>, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of the Court shall close this case.

    So Ordered.

*s/Hugh B. Scott*

Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
February 5, 2020